IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES A. MORNING, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) CIVIL NO. 09-cv-252-WDS |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. 1), to which the government has filed a response (Doc. 12). Also before the Court is petitioner's supplement (Doc. 3), objection to the government's response (Doc. 13), amended petition (Doc. 18), the government's response to the amended petition (Doc. 19), and petitioner's traverse (Doc. 20).

## BACKGROUND

Petitioner was found guilty, after a jury trial, of: (1) conspiracy to possess with intent to distribute crack cocaine in violation of 21 U.S.C. § 846; (2) possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1); and (3) possession of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). *United States v. Morning*, Case No. 94-cr-30013 (S.D. Ill.). Petitioner was sentenced to a total of 324 months imprisonment. Petitioner's convictions and sentences were affirmed on direct appeal. *United States v. Billops*, 43 F.3d 281 (7th Cir. 1994). On March 10, 2009, Petitioner moved for a

reduction in his crack cocaine sentence pursuant to 18 U.S.C. § 3582(c)(2) based on a sentencing guideline that had been lowered and made retroactive by the United States Sentencing Commission. *United States v. Morning*, No. 94-30013 (S.D. Ill.). On March 18, 2009, the Court granted Petitioner's motion and his total sentence was reduced to 300 months imprisonment. It appears that Petitioner has not previously sought relief pursuant to 28 U.S.C. § 2255.

In the instant § 2255 motion, Petitioner challenges his conviction and sentence for possessing a firearm during and in connection with a drug trafficking crime in violation of 18 U.S.C. § 924(c). He asserts two claims: (1) that his lawyer was ineffective;[1] and (2) in light of the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137 (1995), he is "actually innocent" of violating 18 U.S.C. § 924(c) because he did not "use" the firearm during or in connection with a drug trafficking crime, which, he asserts, requires proof of "active employment" of the firearm, and more than mere possession. Petitioner contends that the only evidence presented at trial applicable to this charge was that a pistol was found on the headboard of a bed and five other firearms were located throughout the house. Petitioner contends that this evidence was insufficient - after *Bailey* - to convict him under § 924(c).

Petitioner's conviction became final, for purposes of § 2255, on March 16, 1995, when the time for Petitioner to seek a writ of certiorari to the Supreme Court of the United States expired. *Clay v. United States*, 537 U.S. 522, 525 (2003). Because the petitioner's conviction became final before April 24, 1996, he was required to file his § 2255 motion on or before April

---

[1] Petitioner claims that counsel was ineffective because he allegedly failed to object to the presentence report, failed to request that the jury instruction contain language that the government must show active employment of the firearm, failed to preserve the issue for appellate review, and failed to properly investigate the case. These claims are bare assertions without any factual or other evidentiary support (Doc. 1-1 at 2).

24, 1997.[2] Petitioner filed the instant § 2255 motion on April 1, 2009, nearly twelve years too late. Unless the Court can find a later, applicable start date, petitioner's § 2255 motion must be dismissed as time barred.

## ANALYSIS

### I.  Timeliness of Motion

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified at 28 U.S.C. § 2255, established a one-year limitation period for filing a motion for relief pursuant to 28 U.S.C. § 2255:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of - -
> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f) (2008).

### A. Petitioner's Resentencing Did Not Restart the Clock for § 2255 Statute of Limitation Purposes

To the extent that petitioner asserts that the statute of limitations period restarted because of his resentencing pursuant to 28 U.S.C. § 3582, and his petition is, therefore, timely, he is

---

[2]Petitioner's conviction became final before the AEDPA was enacted, which resulted in a grace period beyond the usual one year statute of limitations. Petitioner had one year from the date of enactment of the AEDPA, specifically, on or before April 24, 1997, to file his § 2255 motion. *Araujo v. Chandler*, 435 F.3d 678, 680 (7th Cir. 2005); *Newell v. Hanks*, 283 F.3d 827, 833 (7th Cir. 2002).

mistaken.  Pursuant to 18 U.S.C. § 3582(b), "[n]otwithstanding the fact that a sentence to imprisonment can subsequently be . . . modified pursuant to the provisions of subsection (c) . . . a judgment of conviction that includes such a sentence constitutes a final judgment for all other purposes."  Petitioner's conviction and sentence, therefore, became final upon completion of direct review.  *See United States v. Steele*, No. 97 C 7040, 1998 WL 26173, at *1 (N.D.Ill. January 15, 1998).

Although research did not reveal Seventh Circuit authority directly addressing this issue, a number of other courts have "held that a reduction of sentence under § 3582(c) does not affect the finality of the judgment of conviction."  *United States v. Thomas*, No. 03-0257, 2012 WL 3062705, at *4 (E.D.La. July 25, 2012); *accord Turner v. United States*, No. 10-0413-CG-C, 2012 WL 2088767, at *3 (S.D. Ala. February 16, 2012);  *Duckett v. United States*, No. 4:09cv589, 2012 WL 489206, at *1 (E.D. Tex. February 15, 2012); *Williams v. United States*, No. 6:10-cv-1549-Orl-31GJK, 2012 WL 398245, at *2 (M.D.Fla. Feb. 8, 2012); *United States v. Sanders*, No. 3:09-cv-00844, 2011 WL 2971156, at *4 (S.D.W.Va. June 29, 2011); *United States v. Wells*, No. 3:02cr51/LAC, 2011 WL 1527034, at *2 (N.D. Fla. March 18, 2011)*;  United States v. Perez*, No. 05-40015-FDS, 2010 WL 3169413, at *1 (D.Mass. Aug. 9, 2010); *United States v. Dixon*, No. 99-525-03, 2009 WL 1559947, at *3 (E.D. Pa. June 3, 2009); *Abbott v. United States*, No. CIV. A. 98-1449, 1998 WL 229652, at *2 (E.D.Pa. April 29, 1998); *Gomez v. United States*, No. 3:09-CV-0073-G, 2009 WL 1309338, at *2 (N.D.Tex. May 11, 2009).

Regarding sentencing modifications pursuant to § 3582(c) or Fed. R. Crim. P. 35, the Fourth Circuit has held that "[t]he plain text of § 3582(b) clearly states that this later modification does not affect the date on which . . . judgment of conviction became final 'for all other

purposes.'" *United States v. Sanders*, 247 F.3d 139, 143 (4th Cir. 2001). The "all other purposes" clause includes the beginning of the § 2255(1) limitation period. *Id.*; *accord United States v. Schwartz*, 274 F.3d 1220, 1224 (9th Cir. 2001). Similarly, the Eighth Circuit has held that a sentence modification pursuant to Rule 35(b) is not a "judgment of conviction," and did not, therefore, begin a new one-year period in which a petitioner could file a motion pursuant to § 2255. *Byers v. United States*, 561 F.3d 832, 835 (8th Cir. 2009); *accord United States v. Chapman*, 220 F.App'x 827, 830 (10th Cir. 2007); *Reichert v. United States*, 101 F.App'x 13, 14 (6th Cir. 2004).

Furthermore, "'[t]he Senate Report accompanying § 3582 confirms that the plain meaning of the statute accords with Congress's intent. Congress explained that subsection (b) makes "clear" that though a prison sentence could be "modified" after imposition by way of "three safety valves," . . . the "judgment of conviction is final."'" *Thomas*, 2012 WL 3062705, at *3 (*quoting Murphy v. United States*, 634 F.3d 1303, 1308 (11th Cir. 2011) (*citing* S.Rep. No. 98-225, at 96 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3304)). "The plain meaning of § 3582(b) in conjunction with the Senate Report, other Circuit Court interpretations and district court opinions confirm that a sentence reduction pursuant to § 3582 does not affect the finality of . . . judgment." *Thomas*, 2012 WL 3062705 at *4.

Accordingly, this Court **FINDS** that petitioner's resentencing pursuant to 28 U.S.C. § 3582(c) did not restart the clock for § 2255 statute of limitation purposes, and petitioner's motion challenging his underlying conviction cannot be considered timely on this basis.

### B.  Equitable Tolling

Petitioner's assertion of "actual innocence" as a result of the *Bailey* decision leads the

5

Court to believe he may expect the Court to apply an alternative start date: the date the Supreme Court made *Bailey* retroactively applicable to cases on collateral review. Using this date, Petitioner only had until May 18, 1999, one year from the date that *Bousley v. United States*, 523 U.S. 614 (1998) made *Bailey* retroactively applicable to cases on collateral review, to file a motion pursuant to § 2255.[3] Petitioner's motion, according to this alternative date, is still nearly ten years too late.

Petitioner asserts that his alleged "actual innocence" is a basis for equitable tolling. (Doc. 18 at 9). He cites a Fifth Circuit case, *Reyes-Requena v. United States*, 243 F.3d 893 (5th Cir. 2001), to support his argument that the § 2255 statute of limitations should be equitably tolled because he was convicted of an offense which is now "non-existent," and to find otherwise would result in a miscarriage of justice. Furthermore, defendant argues that because his co-defendant Shawn Binford's § 924(c) conviction was vacated by this Court, his § 924(c) conviction should be vacated as well. Finally, petitioner argues that the indictment states the charge against him as using *and* carrying a firearm, not using *or* carrying, and because of this, the government had to prove that he both used *and* carried a firearm in accordance with the statute.

The statue of limitations for filing a § 2255 motion "is not jurisdictional but is instead a procedural statute of limitations subject to equitable tolling." *Nolan v. United States*, 358 F.3d 480, 483 (7th Cir. 2004). The Court must dismiss petitioner's claims as time-barred, therefore, unless the there is an adequate basis to equitably toll the statute of limitations in this case.

The Seventh Circuit has found that the common law doctrine of equitable tolling may

---

[3] *But see Dodd v. United States*, 545 U.S. 353 (2005) (holding that the date from which the limitation period begins to run under § 2255(3) is the date that the Court initially recognizes the right asserted in an applicant's § 2255 motion, not the date on which the right is made retroactively applicable).

apply to § 2255 actions, and would permit a late filing when "extraordinary circumstances far beyond the litigant's control . . . prevented timely filing." *Id*. at 484. "[T]he equitable tolling of a statute of limitations is an extraordinary remedy reserved for truly exceptional situations." *Id*. at 486. "Equitable tolling of the statute of limitations is such exceptional relief that we have yet to identify a circumstance that justifies equitable tolling in the collateral relief context." *Id.* at 484 (internal citations and quotations omitted). "Equitable tolling is granted sparingly," and the "threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000).

The doctrine of equitable tolling applies to allow a prisoner to file a § 2255 motion outside the time prescribed by the statute where a party "could not, despite the exercise of reasonable diligence, have discovered all the information he needed in order to be able to file his claim on time." *Taliani v. Chrans*, 189 F.3d 597, 597 (7th Cir. 1999). In *Modrowski v. Mote*, 322 F.3d 965, 967-68 (7th Cir. 2003), the Seventh Circuit listed circumstances in which equitable tolling did not apply: (1) prisoner's lack of access to trial transcript; (2) lack of response from attorney; (3) language barrier; (4) lack of legal knowledge; (5) transfer between prisons; (6) unclear law; (7) death of attorney's father; (8) attorney negligence; and (9) attorney incapacity. Misunderstanding the filing deadline does not justify equitable tolling either. *Robinson v. United States*, 416 F.3d 645, 652 n.1 (7th Cir. 2005).

The Seventh Circuit has also "held that actual innocence is not a freestanding exception to the time limits in § 2244(d)." *Johnson v. Chandler*, 224 F.App'x 515, 519 (7th Cir. 2007) (*citing Araujo v. Chandler*, 435 F.3d 678, 681 (7th Cir. 2005)). The Seventh Circuit has commented on whether "actual innocence" could invoke the doctrine of equitable tolling in the context of a

7

motion filed pursuant to 28 U.S.C. § 2244:

> [N]either the Supreme Court nor this court has ever applied the actual innocence exception to overcome the failure to timely file under § 2244. We find the Eighth Circuit's analysis of this issue in *Flanders v. Graves*, to be persuasive.
>
> > We do not hold that actual innocence can never be relevant to a claim that the habeas statute of limitations should be equitably tolled. For such a claim to be viable, though, a petitioner would have to show some action or inaction on the part of the respondent that prevented him from discovering the relevant facts in a timely fashion, or, at the very least, that a reasonably diligent petitioner could not have discovered these facts in time to file a petition within the period of limitations.
>
> *Flanders v. Graves*, 299 F.3d 974, 978 (8th Cir. 2002).

*Gildon v. Bowen*, 384 F.3d 883, 887 (7th Cir. 2004). The Seventh Circuit subsequently held that "[p]risoners claiming to be innocent, like those contending that other events spoil the conviction, must meet the statutory requirement of timely action." *Escamilla v. Jungwirth*, 426 F.3d 868, 872 (7th Cir. 2005).

Petitioner has presented absolutely nothing to explain why he waited so long to file his motion pursuant to § 2255. Petitioner has stated no extraordinary circumstances beyond his control which prevented him from timely filing his § 2255 motion. Petitioner has alleged no action or inaction on the part of the government that kept him from discovering the relevant information in a timely fashion. Nor does petitioner explain how a reasonably diligent petitioner could not have discovered the facts in time to file a petition within the period of limitations.[4] Notably, petitioner did not miss the filing deadline by days or months, but more than ten (10) years. "Under long established principles, petitioner's lack of diligence precludes equity's

---

[4]In fact, as petitioner notes, his codefendant was able to successfully file such a petition within the relevant time limitation.

operation." *Pace v. DiGuglielmo*, 544 U.S. 408, 419 (2005); *accord Balsewicz v. Kingston*, 425 F.3d 1029, 1034-35 (7th Cir. 2005). Petitioner has failed to meet the high threshold required and has utterly failed to present any circumstances, let alone extraordinary ones, that prevented him from timely filing his motion.

Furthermore, "[i]n order to demonstrate actual innocence in a collateral proceeding, a petitioner must present 'new reliable evidence that was not presented at trial' and 'show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'" *Balsewicz*, 425 F.3d at 1033 (*quoting Schlup v. Delo*, 513 U.S. 298, 299, 327-28 (1995)). Here, petitioner has presented no new evidence of actual innocence, only arguments based upon caselaw which could have been brought forth within the statutory limitations period.

"In *Bailey*, the Supreme Court narrowed the definition of 'use' under § 924(c)(1), holding that 'use' involves the defendant's active employment of a firearm." *Arango-Alvarez v. United States*, 134 F.3d 888, 891 (7th Cir. 1998).[5] The *Bailey* ruling, however, did not consider the definition of "carry," leaving that prong untouched. *Id.* Additionally, the Seventh Circuit noted that "the statute is phrased in the disjunctive **or**, as opposed to [defendant's] indictment and plea agreement which state 'use' **and** 'carry.' A violation of either prong is sufficient under §

---

[5]Notably, in petitioner's traverse (Doc. 20), he takes issue with the fact that the government cited post-*Bailey* cases which were not specifically made retroactive to support its contention that petitioner's conviction can be sustained on the "carry" prong alone. In *United States v. Baker*, 78 F.3d 1241, (7th Cir. 1996), for example, the Seventh Circuit interpreted the post-*Bailey* meaning of "carry:" "the possession of the firearm coupled with the affirmative act of transporting it during and in relation to a drug trafficking crime . . . precipitates liability under § 924(c)(1); here, the act of carrying or transporting the firearm is the 'something more' *Bailey* requires." *Id*. at 1247. The Seventh Circuit, in *Baker*, did exactly what the petitioner challenges here – used a post-*Bailey* interpretation of the term "carry" to uphold a defendant's conviction that occurred pre-*Bailey*. These post-*Bailey* cases are precedential as to the application of *Bailey*. Reliance on post-*Bailey* cases which interpret that decision is, therefore, entirely appropriate.

924(c)(1)." *Id*. at n.2.

"[S]omething more than possession of the firearm in relation to the drug trafficking crime [is] required to demonstrate carrying." *United States v. James*, 464 F.3d 699, 705 (7th Cir. 2006) (*citing United States v. Baker*, 78 F.3d 1241, 1247 (7th Cir. 1996)).  Circumstantial evidence that "a defendant . . . transports a gun on his person or within his reach, available for immediate use, during and in relation to a drug-trafficking crime meets the definition." *James*, 464 F.3d at 705 (*citing Baker*, 78 F.3d at 1241).

Unlike the circumstances surrounding his co-defendant's petition, the government has not conceded that petitioner was actually innocent of the § 924(c) charge.  The government does, however, concede that the evidence presented at petitioner's criminal trial would not meet the *Bailey* definition of "use."  It asserts, however, that the evidence would still meet the definition of "carry," and his conviction is still valid on this basis.  The government directs the Court's attention to the trial record, in which evidence was produced that petitioner admitted to law enforcement that "he kept a .380 caliber handgun, which he had obtained from one of his drug suppliers, and he kept that for protection during his drug business and kept it close while he was selling." (Doc. 12-1 at 21).  Notably, the trial testimony from which this information came was based upon a signed statement that petitioner made to law enforcement at the time of his arrest. (Doc. 12-1 at 19-21).

This statement provided the required "nexus" between the firearms and the drug transactions.  Petitioner admitted that he obtained the gun from a drug supplier, a factor that is certainly relevant to whether a firearm was used in connection with his drug business.  He further admitted that he kept it close and used it for protection while selling drugs.  These admissions

10

show that petitioner did not merely innocently possess firearms, but that he specifically obtained and used firearms in connection with his drug business, which meets the "carry" prong of § 924(c). Notably, "[c]ourts do not allow prisoners to start with clean slates after their convictions and argue 'actual innocence' as if the trial had not occurred." *Escamilla*, 426 F.3d at 871.

Moreover, the government, quoting trial transcripts, asserts that on the very first day of trial, the Court instructed the jury as to the elements of Count 3 of the superceding indictment, specifically stating:

> To sustain the charge of using *or* carrying a firearm during and in relation to a drug trafficking crime as charged in Count 3 of the superseding indictment, the Government must prove the following beyond a reasonable doubt: First, that the defendant did use *or* carry a firearm; second, that the defendant did so during and in relation to a drug trafficking crime.

(Doc. 19 at 2, quoting Trial transcripts I at 8) (emphasis added). The government also provides transcripts proving that, on the last day of trial, the Court Clerk properly reported that the jury found the petitioner guilty of "using *or* carrying a firearm during and relation to a drug trafficking crime as charged in Count 3 of the Superseding Indictment." (Doc.12-1 at 22) (emphasis added). The government concedes that the superseding indictment uses the language "use *and* carry," but asserts that there is no significant legal difference between that clause and "use *or* carry."

The Seventh Circuit has specifically addressed this issue:

> In *Turner v. United States*, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), the Supreme Court explained that "when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . , the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Id*. at 420, 90 S.Ct. 642. We picked up on this language in *United States v. Bond*, 231 F.3d 1075 (7th Cir. 2000), and noted that there is no need to reverse a conviction that is supported by one of several charged acts so long as the alternative bases for conviction are neither unconstitutional nor illegal. *Id*. at 1078. The government urges us to apply this well-established rule here, and offers *United States v.*

> *LeDonne*, 21 F.3d 1418 (7th Cir.1994) as additional support. In *LeDonne* we explained that "where a statute defines two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count . . . . And proof of any one of those acts conjunctively charged may support a conviction." Id. at 1427 (citations omitted). The Supreme Court's decision in *Turner* and our later decisions in *Bond* and *LeDonne* foreclose the Officers' argument that the government either had to amend the indictment against them to charge using *or* carrying a firearm, or prove that each individual both used *and* carried a firearm at trial.

*United States v. Moore*, 363 F.3d 631, 640 (7th Cir. 2004) (reversed on other grounds at 543 U.S. 1100 (2005)). In accordance with this ruling, petitioner's argument that he was charged with a "non-existent" offense thereby stripping the Court of subject-matter jurisdiction, is meritless. Furthermore, the jury was specifically instructed that the government must prove beyond a reasonable doubt that the defendant used *or* carried a firearm, further dispelling any potential issue with the language of the superceding indictment.

      Finally, petitioner's reliance on *Reyes-Requena* is misplaced. The Fifth Circuit, in *Reyes-Requena*, determined that "§ 2241 may be utilized by a federal prisoner to challenge the legality of his or her conviction or sentence if he . . . can satisfy the mandates of the so-called § 2255 'savings clause.'" 243 F.3d at 901. To utilize the "savings clause," the petitioner must demonstrate that § 2255 cannot provide an adequate or effective remedy. *Id*. The Seventh Circuit created a test for applicability of the savings clause in the context of *Bailey* claims in *In re Davenport*, 147 F.3d 605 (7th Cir. 1998), a case involving successive § 2255 motions: "[a] federal prisoner should be permitted to seek habeas corpus only if he had no reasonable opportunity to obtain earlier judicial correction of a fundamental defect in his conviction or sentence because the law changed after his first 2255 motion." *Id*. at 611. The Court added three qualifications to this statement: (1) "the change of law has to have been made retroactive by the

Supreme Court;" (2) "it must be a change that eludes the permission in section 2255 for successive motions;" and (3) "'change in law' is not to be equated to a difference between the law in the circuit in which the prisoner was sentenced and the law in the circuit in which he is incarcerated." *Id*. at 611-12.  In *Davenport*, the key inquiry was whether the defendant's claim could, at any time, have been presented in a motion under § 2255 or in a direct appeal.  *Id*. at 610. "A procedure for postconviction relief can fairly be termed inadequate when it is so configured as to deny a convicted defendant *any* opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense."  *Id*. at 611.  Petitioner clearly fails the *Davenport* test in that he could have brought a § 2255 petition after the Supreme Court made *Bailey* retroactive, but he simply failed to do so.  Petitioner had a reasonable chance to petition for correction of the alleged error, but he did not, and therefore neither *Reyes-Requena*, nor *Davenport* helps him.

This Court **FINDS**, therefore, that neither equitable tolling, nor the § 2255 savings clause are applicable here, and petitioner's motion pursuant to § 2255 is time barred.

### II. Even if Petition were Timely Filed, Petitioner's Ineffective Assistance of Counsel Claims are Meritless

This Court has determined that petitioner's claims are time barred.  Even if the Court could consider his ineffective assistance claims, however, these claims would fail.  Petitioner asserts that counsel was ineffective because he allegedly failed to object to the presentence report, failed to request that the jury instruction contain language that the government must show active employment of the firearm, failed to preserve the issue for appellate review, and failed to properly investigate the case.  These claims are bare assertions without any factual or other evidentiary

13

support (Doc. 1-1 at 4). Petitioner fails to support these claims with any facts or evidence whatsoever. The Court need not proceed to further investigate these claims because petitioner did nothing more than make "mere unsupported assertions." *See Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010); *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006).

Furthermore, to the extent that petitioner claims that his attorney failed to request a jury instruction that used the "active employment of a firearm" language that only became applicable after the conclusion of his case, these claims fail. "The Sixth Amendment does not require counsel to forecast changes or advances in the law, or to press meritless arguments before a court." *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993).

Accordingly, the Court **DENIES** petitioner's motion to vacate, set aside or correct sentence, and **DISMISSES** the petition with prejudice, on all grounds raised.

### III.     Hearing

In his initial petition, petitioner requests a hearing. Because summary dismissal of a § 2255 motion is appropriate when the motion and the files and records of the case conclusively demonstrate that the petitioner is not entitled to relief, this Court **FINDS** that it is unnecessary to hold a hearing, and petitioner's request is **DENIED**. 28 U.S.C. § 2255(b) (2010), *see also, Politte v. United States*, 852 F.2d 924, 931 (7th Cir. 1988).

### IV.     Certificate of Appealability

Should Petitioner desire to appeal this Court's ruling dismissing his motion under 28 U.S.C. § 2255, he must first secure a certificate of appealability, either from this Court or from the Court of Appeals. *See* FED. R. APP. P. 22(b); 28 U.S.C. § 2253(c)(1). Pursuant to 28 U.S.C. § 2253, a certificate of appealability may issue "only if the applicant has made a substantial

showing of the denial of a constitutional right."

This requirement has been interpreted by the Supreme Court to mean that an applicant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner need not show that his appeal will succeed, *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003), but Petitioner must show "something more than the absence of frivolity" or the existence of mere "good faith" on his part. *Id*. at 338 (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).  If the district court denies the request, a petitioner may request that a circuit judge issue the certificate. FED. R. APP. P. 22(b)(1)-(3).

For the reasons detailed above, the Court has determined that petitioner has not stated any grounds for relief under § 2255.  Furthermore, the Court finds no basis for a determination that its decision is debatable or incorrect.  Thus, Petitioner has not made "a substantial showing of the denial of a constitutional right."

**IT IS THEREFORE ORDERED** that a certificate of appealability shall **NOT** be issued.

## CONCLUSION

The Court **DENIES** petitioner's motion to vacate, set aside or correct sentence on all grounds raised, and **DISMISSES** the petition with prejudice.  Each party shall bear its own costs.

A Certificate of Appealability shall **NOT** be issued.

The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED**

**DATE: September 25, 2012**

/s/  WILLIAM D. STIEHL
         DISTRICT JUDGE